FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  NOV 06 2017  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X   CIVAL ACTION NO.

MICHAEL GROSSKOPF,

Plaintiff,                                **COMPLAINT**

Plaintiff Demands a Trial by Jury

-against-

CV17 6442

NATIONAL GENERAL INSURANCE,

FEUERSTEIN, J.

Defendants.

BROWN, M. J.

--------------------------------------------------------------X

Plaintiff, by and through his attorney, William J. Raniolo, hereby

complains of the defendant, upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as

codified, 42 U.S.C. §2000e *et. Seq.* ("Title VII"); and the Age Discrimination in Employment

Act of 1967, 29 U.S.C. §621 et seq. ("ADEA"); and to remedy violations of the New York State

Executive Law, §296 et. seq. (the "NYSHRL" "Human Rights Law"); based upon the

supplemental jurisdiction of this Court pursuant to *Gibb,* 383 U.S. 715 (1966) and 28 U.S.C.

§1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed

and discriminated against by the Defendants on the basis of his sex/gender, his age, his disability,

and he was retaliated against and was wrongfully terminated.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §2000e et. seq.; 29 U.S.C. §201 et

1

seq.; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto. the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq. "ADEA"); the New York State Executive Law, §296 et. seq. (the "Human Rights Law");

3.   This action involves a Question of Federal  Law.

4.   Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of the State of New York.   28 U.S.C. §1391 (b).

5.   On or about October 14, 2015, Plaintiff filed a charge of discrimination with The Equal Employment Opportunity Commission ("EEOC").

6.   On or about August 9, 2106, Plaintiff received a Notice of Right to Sue letter from the EEOC.

7.   This action is being brought within ninety (90) days of said Notice of Right to Sue letter.

## PARTIES

8.   .  Plaintiff is a resident of the State of New York, County of Suffolk.

9.   At all times material, Defendant National General Insurance Company was and is a  Domestic Professional Corporation located at 5630 University Parkway, Winston Salem, North Carolina 27105. With Offices at Route 110, Quad 3 S. Melville, New York.

10.  At all times material, Defendant National General Insurance Company was the employer of the Plaintiff, Michael T. Grosskopf.

11.   At all times material, Mrs. Lisa Van Dett was an employee of National

2

General Insurance Company.

12. At all times material, Defendant Lisa Van Dett was Plaintiffs immediate supervisor and/or had supervisory authority over Plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. On or about October 14, 2016 Mr. Grosskopf filed a Charge of Discrimination

Against National General Insurance Company with the New York District Office of the Equal

Employment Opportunity Commission ("EEOC"), Charge No. 520-2016-03303, charging it with

sex, age and retaliation discrimination in connection with his dismissal from employment.

14. By notice dated August 8, 2017, and which he received on August 11,

2017, Mr. Grosskopf was notified by the EEOC of his right to file a civil action against the

National General Insurance Company.

15. This lawsuit has been timely filed within 90 days of Michael Grosskopf's receipt of

the EEOC's right-to-sue notice.

## MATERIAL FACTS

16. In or around September 2014, Plaintiff began working for Defendant

National General Insurance Company as a Senior Property Claims Adjuster at Route 110,

Quad 3 S. Melville, New York. Plaintiff's duties involved the handling of large complex

property losses and resolving these claims subject to the appropriate policy provisions in a

timely, efficient, courteous and professional manner.

3

17. Throughout his employment with Defendants, Plaintiff was forced to endure constant harassment from Van Dett, his immediate supervisor at National General Insurance Company.

18. By way of example, on numerous occasions, Van Dett stated that "Grosskopf would be able to handle his job duties better if he was a younger man."

19. On another occasion, Van Dett stated that "Women workers could do his job better, as they were more able workers than the male employees who worked for her."

20. Van Dett constantly berated Plaintiff Grosskopf for taking time off to attend to his increasing medical needs. She was made aware of the medical issues which Grosskopf suffered and was not pleased with his need to take time off work to attend to those needs.

21. On another occasion Van Dett made a reference to Grosskopf being overweight, and remarked that maybe that was part of the medical problems he was having.

22. Despite Plaintiffs numerous complaints to Van Dett's Supervisors about Mrs. Van Dett's remarks and disparaging comments made on a daily basis, the harassment continued.

23. On numerous occasions Van Dett made disparaging comments regarding Plaintiffs activities involving his being a Chief on the Nissequogue Fire Department, which mandated that Grosskopf respond to local fire emergencies designated by Suffolk County as "A signal One Disaster."

24. Plaintiff Grosskopf always made up for the time taken away from his

4

duties at National General Insurance Company, by working ten and twelve hour days, and by working on Weekends to catch up on his pending workload of claims.

25.   On one occasion, Plaintiff Grosskopf was admonished by Van Dett because he did not extend her an invitation to an Installation Dinner at the Nissequogue Fire Department, when he invited other Supervisory Personnel with whom he worked with at the National General Insurance Company.

26.   Plaintiff Grosskopf alleges that their already tenuous relationship was further degraded Van Dett was left out of this "Social Invitation."   These are just some examples of the harassment Plaintiff had to endure while working for Defendants over a two year period while in the employ of the National General Insurance Company.

27.   Plaintiff Grosskopf's issues with the National General Insurance Company and more specifically with his immediate supervisor, Van Dett, began nine months subsequent to his start of his employment on September 16, 2014.

28.   Grosskopf had previously worked for Tower Insurance Company for approximately six years prior to being merged into the National General Insurance Company.

29.   Grosskopf had worked under four previous supervisors in his employment with Tower before Van Dett was promoted and assigned as his supervisor for the last year and one half of his employment.

30.   Plaintiff Grosskopf had always achieved 100% on his performance

5

reviews during his entire employment history with Tower Insurance Company; which included favorable reviews from his last supervisor Van Dett.

31. Plaintiff Grosskopf alleges that Van Dett began her harassment of him shortly after she was allowed to supervise her Unit from her home, and further animosity developed between Grosskopf and Van Dett over "Office Politics."

32. Plaintiff Grosskopf states that when Tower Insurance Company was absorbed by National General Insurance Company on September 16, 2014, Van Dett was kept in place as Grosskopf's supervisor.

33. Grosskopf states that when he left Tower Insurance Company and began working for National General Insurance Company, they relieved him of the 40 Commercial Claims he was handling, and assigned him 60 new Residential Property Claims.

34. Grosskopf states that he was the only employee in his new unit that was trained in four separate Computer Systems which directly related to his getting assigned additional claims that only he could handle because of his ability to access the older systems.

35. Grosskopf states that over the next three months he was assigned over two -hundred complex claims and that due to the circumstances of not being properly trained on the new systems he was working ten to twelve hours each weekday and worked at the office

on weekends in an attempt to keep up with his workload.

6

36. Grosskopf states that by March 2015, six months after the start of his employment with National General Insurance Company, he was working sixty-hour weeks in a futile attempt to keep up with his ever increasing workload of new claims.

37. Grosskopf states that he had a conversation with his immediate supervisor Van Dett in early March 2015 regarding his pending claims and that he informed her that he was working every weekend, and overtime every week day to close out claims.

38. Grosskopf states that he pleaded with Van Dett to approve the authorizations he had requested from her, so that he could close out claims and to slow down the new assignment of claims until he could reasonably catch up on his workload.

39. Grosskopf states that Van Dett kept assigning him new claims, despite his objections and continued to withhold authorization allowing him to close out old files.

40. Grosskopf states that on June 2, 2015 he was given a written Unacceptable Work Performance review by Van Dett, with a telephone link to the Human Resources Department. Grosskopf states that he vehemently denied what was written in the review, and he refused to put his signature on a patently false and misleading Performance Review.

41. Grosskopf recalls that Van Dett was visibly upset over his refusal to sign the Performance Review which she personally wrote, and that she was admonished by Human Resources for her conduct when she lost her composure during the Performance Review session.

42. Grosskopf states that for the next two months the claims kept being assigned to

7

him, the authorizations to close out old claims were still being withheld by Van Dett, and that he continued working 60 hour weeks to keep up with his pending.

43.   Grosskopf states that on July 30, 2015 he was given another Unacceptable Work Performance review by Van Dett, and again with a telephone link with the Human Resource Department.  Grosskopf again vehemently denied what was written in the review, and questioned the motivation behind being place on Probation.  Grosskopf again refused to sign a patently false and misleading Performance Review.

44.   Grosskopf states that his working relationship with Van Dett deteriorated to a new low  and that he was only given a few large complex losses for the next two months, and by working sixty-hour weeks he was able to obtain a 200% closing ratio on his outstanding case files; bringing his pending files from 220 to approximately 100.

45.   Grosskopf states that on October 2, 2015 another meeting was held with Van Dett with a telephone link to the Human Resource Department.  In this meeting Grosskopf was given an "Extention of current Performance Improvement Plan."  Van Dett, in her written review, acknowledged that progress had been made.

46.  Grosskopf  signed this Performance Improvement Plan Follow-Up Evaluation and provided an answer which addressed the issues stated by Van Dett in her written review.

47.   Grosskopf  by way of his answer to the Performance Improvement Plan

acknowledged that he had improved his performance, commented on lowering his pending

8

claims, and stated how much stress was placed on him by having to work overtime and weekends to keep his job.

48.   Grosskopf states that he continued to work seven day sixty-hour weeks for the next five weeks, and continued to close most of his open files, bringing the total open files from 100 down to approximately 40.  He was not given any further direction by Van Dett, who remained aloof and unavailable during this critical period of his employment.  Attempts to reach out to Van Dett by phone were not returned.

49.   Grosskopf states that on November 10, 2015, while at his desk in the Melville office, Van Dett asked him to come into an office, where a Human Resource Manager, Lisa Retko, was on the phone, and Grosskopf was told that his services would no longer be needed, and that his employment with the National General Insurance Company would be terminated effective immediately.

50.   Grosskopf was totally blindsided by the termination of his employment, as he believed  that he had done everything in his power, by working sixty plus hour  each week for the last eleven months to satisfy the requirements Van Dett required to keep his job, by reducing his pending files down to a manageable level.

51.   As a result of Defendants' employees actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

52.   As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered and continues to suffer severe emotional distress and physical ailments.

53.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss  of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff  has  also  suffered  future pecuniary losses, emotional pain, suffering, inconvenience, loss of  enjoyment  of  life,  and other non-pecuniary losses.

54. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

### AS A FIRST CAUSE OF ACTION UNDER TITLE VII DISCRIMINATION

55. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

56. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et Seq., as amended, for relief based  upon the unlawful employment practices of the above-named Defendants. Plaintiff complaints. of Defendants' violation of Title VII's  prohibition  against  discrimination in employment  based, in whole or in part, upon an employee's sex/gender and his unlawful termination was improperly  based on his sex or gender.

### SECOND CAUSE OF ACTION UNDER TITLE VII DISCRIMINATION

57. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)

10

provides that it shall be an unlawful employment practice for an employer:

> "(1) to ... discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

59. Defendant engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of him opposition to the unlawful employment practices of Defendants,

### THIRD CAUSE OF ACTION VIOLATION OF THE ADEA

### (THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967)

60. Grosskopf repeats and incorporates by reference the allegations of paragraphs 1-59 of the Complaint as if they were set forth in full.

61. The National General Insurance Company terminated Mr. Grosskopf's employment on account of his age and thereby violated his right to equal employment opportunity as protected by the ADEA. including, but not limited to terminating Plaintiffs employment and/or failing to rehire Plaintiff.

### FOURTH CAUSE OF ACTION UNDER STATE LAW DISCRIMINATION

62. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length

63. Executive Law § 296 provides that "I. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's ... race [or]... sex, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such. Individual in compensation or in terms, conditions or privileges of employment."

64. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his sex.

65. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

## FIFTH CAUSE OF ACTION UNDER STATE LAW RETALIATION

66. Plaintiff repeats, reiterates and realleges each and every allegation made in the above Paragraphs of this Complaint as if more fully set forth herein at length.

67. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

"For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

68. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiffs opposition to employer's unlawful employment practices.

12

## DISABILITY DISCRIMINATION,
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT of
## 1990, 42 U.S.C.A. § 12101 et. seq.

69.     Plaintiff hereby repeats and realleges each allegation contained in the

Paragraphs above.

70. Plaintiffs employment was terminated, in substantial part, due to his physical

disability, defendant's perception that plaintiff was disabled, and plaintiffs record or disability.

71. Plaintiff has been unable, despite reasonable efforts, to find  comparable

employment.

72. As a proximate result of defendants' discrimination against plaintiff on the basis of

his disability and a record or perception of disability, plaintiff has suffered and continues to

suffer substantial losses, including the loss of past and future earnings, bonuses, deferred

compensation, and other employment benefits.

73. As a further proximate result of defendants' actions, plaintiff has suffered and

continues to suffer impairment and damage to plaintiff's good name and reputation by

defendants.

74. As a further proximate result of defendants' actions, plaintiff has suffered and

continues to suffer severe and lasting embarrassment, humiliation and anguish, and other

incidental and consequential damages and expenses.

75. The conduct of defendants was outrageous and malicious, was intended to injure

plaintiff, and was done with reckless indifference to plaintiffs protected civil rights, entitling

plaintiff to an award of punitive damages.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the

Defendant:

     A.  Declaring that the Defendant engaged in unlawful employment practices prohibited by Title VII, and the NYSHRL; and that the Defendants harassed and discriminated against Plaintiff on the basis of his sex/gender, retaliated against him and unlawfully terminated him; and

     B.  Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practice;

     C.  Awarding Plaintiff compensatory damages for mental,  emotional  and  physical injury, distress, pain and suffering and injury to  reputation;

     D.  Liquidated damages in an amount equal to twice Michael Grosskopf 's back pay losses as authorized by the ADEA;

     E.  An award of reasonable attorneys fees and costs to compensate Michael Grosskopf for having to prosecute this action; and

     F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems· just and proper.

Dated: East Setauket, New York
        November 6, 2017

William J. Raniolo Esq.
15 Woodhull Road
East Setauket, New York 11733
(631) 219-2535
Fax: 631-751-7702
WJRaniolo@aol.com

15